STELLA JANKOWSKI, ADMINISTRATRIX AD PROSEQUEN-
DUM, PLAINTIFF-RESPONDENT, v. ALFRED WELCH,
DEFENDANT-APPELLANT, AND BURROUGHS ADDING
MACHINE CO., A CORPORATION, DEFENDANT.

Argued January 22, 1947—Decided May 1, 1947.

Before CASE, CHIEF JUSTICE, and Justices HEHER and
COLIE.

For the plaintiff-respondent, *Frank P. Zimmer.*

For the defendant-appellant, *Coult, Satz, Morse & Coult*
(*Joseph Coult* and *Joseph Coult, Jr.*).

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. The appeal is from a judgment
against the defendant below, appellant here, in a death action
arising out of an automobile collision at the intersection of
Raymond Boulevard and Mulberry Street in the City of
Newark on December 2d, 1943. The sole ground of appeal
is that the trial court refused to direct a verdict in favor of
the defendant and the argument thereunder is that the de-
fendant had immunity under section 20 of chapter 251,
*Pamph. L.* 1942, "An act concerning civilian defense during
the war emergency," in that he was chief of the fire guards
of the City of Newark, a volunteer wartime organization, that
air raid signals were in process of being given and that the
defendant was, in good faith, and in accordance with his
duty, on his way to headquarters.

The statutory provision (section 20, chapter 251, *Pamph. L.* 1942) is that "Neither the State nor any political subdivision of the State under any circumstances, nor the agents, officers, employees, servants or representatives of the State or any political subdivision thereof, including all volunteers, in good faith carrying out, complying with, or attempting to comply with, any order, rule or regulation promulgated pursuant to the provisions of this act, or performing any authorized service in connection therewith, shall be liable for any injury or death to persons or damage to property as the result of any such activity."

Regulations set up under the cited statute provided that a "yellow" signal, so-called, was a confidential preliminary signal, not to be given by audible public alarm, which indicated the possibility of an air raid, and was to be transmitted only to key persons; that the "blue" signal was an audible warning given to indicate the probability of an air raid and that upon the giving of the signal civilian defense forces should mobilize and, if the signal be given at night, that lights in buildings (not street lights) should be extinguished or obscured but that traffic might continue movement; and that the "red" signal was an audible signal indicating the proximity of enemy aircraft and required a general blackout. Although traffic generally was halted by a red signal, defendant, by virtue of his position, could continue to move.

Defendant received, by telephone, the confidential yellow signal. He proceeded in his automobile toward the city hall, the appointed place of meeting. He had gone a distance of approximately two and one-half miles and was still about one mile from his destination when the blue signal was sounded. At the corner of Mulberry Street and McCarter Highway there was a traffic light which, at the time, showed red against traffic on Mulberry Street and green in favor of traffic on Raymond Boulevard. Defendant was on Mulberry Street approaching McCarter Highway. He was driving at a speed between thirty and thirty-five miles an hour. Notwithstanding the red light he did not hesitate at the McCarter Highway crossing. He did not pause for an observation. He saw, so he says, that there was no traffic approaching from his left

but he was unable to make an observation to his right whence the Jankowski car was approaching. He testified: "This car, the Jankowski car, seemed to loom in front of me almost without any warning, because I could not see the approaching traffic with that board in my way on the side of the parking lot. There is a big board and bushes up on the side. It blocks your view completely. I was on the right side of the road and proceeding out into the intersection, the Jankowski car right in front of my car and I hit the rear part of it." The Jankowski car was hit with such force that it was spun around a couple of times and "jumped" the curb. Jankowski was injured so severely that he died a few days later. There can be no doubt, under the testimony, that the defendant, deliberately and in speed, undertook to traverse the crossing with knowledge that traffic on the transverse street had, according to traffic signals, complete and exclusive right to passage, without knowing or taking the time to ascertain whether traffic was approaching from his right and taking no precaution except to sound his horn. His one thought, according to his testimony, was to get to his destination before the red air signal should be sounded.

The cases of *Smith* v. *Town of Orangetown*, 57 *Fed. Supp.* 52, and *Gaglio* v. *City of New York*, 143 *Fed. Rep.* (2d) 904, are cited for the appellant, and *Jones* v. *Gray*, 45 *N. Y. Sup.* (2d) 519, *contra*. Those decisions are not at variance with the following determination.

There was no air raid. The event was a practice exercise. Welch did not know that it was only a training incident, but he knew that such alarms would be sounded as a matter of training and that this event could be such a one.

The question of good faith was for the jury, and the burden of proving it was upon the defendant. *Smith* v. *Town of Orangetown, supra*. The defendant grossly and deliberately violated traffic regulations. If the crossing had been without traffic lights or other means of directing traffic, he would, normally, have been under the duty of proceeding with due care, making whatever observation that required. As it was, the defendant speeded through an intersection that was, by signal, closed to him and open to a driver who was lawfully

there and whose life paid the penalty for defendant's act. It does not appear that the sounding of the automobile horn by the defendant carried any adequate warning to the decedent or was such a warning as to be heard by him. So far as concerns traffic moving from the decedent's direction, the defendant might as well have been driving blindfold. The mental picture of a man driving at thirty-five miles an hour through busy city streets in sheer disregard of prohibitory signals and traffic conditions naturally suggests the inquiry whether that method of proceeding toward the accomplishment of a lawful objective was consistent with good faith. The defendant was not under an absolute order to be at headquarters before the "red" air signal was sounded. His superior officer, who transmitted the "yellow" signal to him, testified that the order to attend as quickly as possible carried with it the implication "as quickly as was possible consistent with safety." The statute was not, we think, intended to give *carte blanche* to recklessness or to wholly unnecessary disregard for life, limb and property.

Whether or not the defendant acted in good faith or from other motivation was a question for the jury. The court did not err in so ruling.

The judgment below will be affirmed.